UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re:<br><br>The Ruins, LLC,<br><br>     Debtor. | Bankruptcy Case No.:  25-30004<br><br>Chapter 7 |
| Build, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>Erik A. Ahlgren, solely in his capacity as the duly appointed Chapter 7 Trustee,<br><br>     Defendant. | Adversary Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE, INJUNCTIVE RELIEF, BREACH OF CONTRACT, AND OTHER RELIEF**

Plaintiff Build, LLC ("Build"), for its Complaint against Erik A. Ahlgren, solely in his capacity as the duly appointed Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of The Ruins, LLC (the "Debtor"), alleges as follows:

**JURISDICTION AND VENUE**

[¶1] This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding arises in and relates to the above-captioned bankruptcy case and concerns the interpretation, enforcement, and implementation of this Court's prior orders entered in connection with the administration of the bankruptcy estate.

1

[¶2] Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises in and relates to the above-captioned bankruptcy case pending before this Court.

[¶3] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including, without limitation, matters concerning the administration of the estate, orders approving the sale of property of the estate, and other proceedings affecting the liquidation of assets of the estate and the adjustment of the debtor-creditor relationship. In the alternative, to the extent any claim is determined to be non-core, Build consents to this Court hearing the proceeding and submitting proposed findings of fact and conclusions of law to the United States District Court pursuant to 28 U.S.C. § 157(c), to the extent necessary.

[¶4] This Court possesses inherent authority, together with authority under 11 U.S.C. § 105(a), to interpret, enforce, clarify, and implement its own orders, including the Sale Order entered on June 4, 2026, approving the Purchase Agreement that is the subject of this adversary proceeding.

[¶5] Build seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, together with specific performance, injunctive relief, and such other legal and equitable relief as this Court deems just and proper.

[¶6] This adversary proceeding does not seek to collaterally attack or modify the Sale Order. Rather, Build seeks a determination of the parties' respective rights and obligations arising from the Trustee's administration of the Court-approved sale process, including the Trustee's declaration of default, the disposition of Build's earnest money deposit, the Trustee's asserted authority to proceed with the backup bidder, and the interpretation and enforcement of the Sale Order and Purchase Agreement in light of the events that occurred during the attempted closing.

2

## NATURE OF THE ACTION

[¶7] This adversary proceeding arises from the Trustee's refusal to consummate a court-approved sale of substantially all of the Debtor's real property to Build pursuant to an Asset Purchase Agreement approved by Order of this Court entered on June 4, 2026 (the "Sale Order").

[¶8] The Trustee now contends that Build defaulted under the Purchase Agreement by failing to close on or before July 6, 2026. Build disputes that assertion.

[¶9] The central issue presented is not whether Build desired to complete the transaction. Rather, the issue is whether the Trustee was capable of delivering marketable title sufficient to permit consummation of the transaction in accordance with the Purchase Agreement, the Sale Order, and commercially reasonable closing requirements.

[¶10] Prior to the scheduled closing, Build and its prospective lender discovered that commercially acceptable owner's and lender's title insurance could not be issued under the Sale Order as entered, thereby preventing the scheduled closing from occurring. The closing agent likewise advised that it could not proceed with closing under the Sale Order in its existing form.

[¶11] Those title issues were promptly communicated to the Trustee.

[¶12] Rather than dispute the existence of those concerns, the Trustee *subsequently* filed a motion pursuant to Rule 60 seeking to amend the Sale Order by specifically identifying and enumerating liens and encumbrances in an effort to address the title underwriting issues that had prevented closing.

[¶13] Notwithstanding the Trustee's subsequent effort to amend the Sale Order, the Trustee declared Build in default, sought to terminate Build's rights under the Purchase Agreement, and asserted the right to proceed with the sale to the backup bidder.

3

[¶14] In the Rule 60 proceedings, the Trustee has further asserted that he had no obligation to provide commercially insurable title, that delivery of a Trustee's Deed constituted complete performance of all of his obligations, that Build lacked financing, and that Build alone bears responsibility for the failed closing notwithstanding the Trustee's contemporaneous efforts to amend the Sale Order.

[¶15] Those positions present actual and substantial controversies concerning the parties' respective contractual rights and obligations under the Purchase Agreement, the legal effect of the Trustee's inability to consummate the court-approved sale, the disposition of Build's earnest money deposit, and the Trustee's authority to terminate Build's contractual rights and proceed with a sale to the backup purchaser.

[¶16] Build therefore seeks declaratory, equitable, and injunctive relief establishing the respective rights and obligations of the parties and preserving the status quo pending final adjudication.

**PARTIES**

[¶17] Plaintiff Build, LLC ("Build") is a South Dakota limited liability company with its principal place of business in Fargo, North Dakota.

[¶18] Build was the successful purchaser at the Court-approved sale conducted in this bankruptcy case and is the purchaser under that certain Real Estate Purchase and Sale Agreement (Doc. 327) approved by the Sale Order entered by this Court on June 4, 2026 (the "Purchase Agreement").

[¶19] Defendant Erik A. Ahlgren is the duly appointed Chapter 7 Trustee of the bankruptcy estate of The Ruins, LLC and is sued solely in his representative capacity as Chapter 7 Trustee.

4

[¶20] The Debtor, The Ruins, LLC, is a South Dakota limited liability company presently subject to proceedings under Chapter 7 of the Bankruptcy Code before this Court.

## FACTUAL BACKGROUND

### A.  The Bankruptcy Case

[¶21] On or about January 6, 2025, the Debtor commenced the above-captioned bankruptcy proceeding.

[¶22] The case was subsequently converted to Chapter 7.

[¶23] Following conversion, Defendant was appointed Chapter 7 Trustee.

[¶24] Among the principal assets of the bankruptcy estate was certain commercial real property commonly known as "The Ruins," together with related improvements and associated property interests located in Watertown, South Dakota and more completely described in the Purchase Agreement (the "Property").

[¶25] The Trustee determined that liquidation of the Property would maximize value for creditors of the estate.

### B.      Marketing of the Property

[¶26] The Trustee marketed the Property for sale.

[¶27] Multiple parties expressed interest.

[¶28] Build ultimately submitted the highest and best offer and was declared the Successful Bidder.

[¶29] Archer Land Co., LLC ("Archer") submitted the backup bid.

[¶30] Following notice and hearing, the Trustee sought approval of the sale to Build pursuant to section 363 of the Bankruptcy Code.

### C. The Purchase Agreement

[¶31] The Trustee and Build entered into a written Purchase Agreement governing the sale of the Property. The Purchase Agreement, Section 6, expressly sets forth the Trustee commitment to convey "fee simple title" to Build free and clear of liens subject only to permitted exceptions PLUS "all other documents reasonably customary to close the transaction."

[¶32] Pursuant to the Purchase Agreement, Build agreed to purchase the Property for $11,265,000 in cash.

[¶33] Build timely deposited earnest money in the amount of $1,125,000.

[¶34] The Purchase Agreement contemplated a closing on or before July 6, 2026, unless otherwise extended pursuant to its terms or by agreement of the parties.

[¶35] Build undertook substantial efforts and incurred significant expense in preparation for closing.

[¶36] Among other things, Build retained legal counsel, lenders, consultants, environmental professionals, title professionals, and other advisors necessary to complete the acquisition.

### D. Entry of the Sale Order

[¶37] On June 4, 2026, this Court entered the Sale Order proposed by the Trustee approving the Purchase Agreement and authorizing the Trustee to consummate the sale to Build.

[¶38] The Sale Order further authorized the Trustee to proceed with the sale to Archer under specified circumstances if the sale to Build was unable to close.

[¶39] Build accepted the Sale Order and proceeded in good faith toward closing.

### E.  Build's Good Faith Efforts to Close

[¶40] Following entry of the Sale Order, Build diligently pursued financing necessary to complete the acquisition notwithstanding the absence of a financing contingency.

[¶41] Build communicated regularly with the Trustee and the Trustee's professionals concerning matters necessary to complete closing.

[¶42] Build coordinated with the designated title company, lenders, and closing professionals regarding preparation of closing documents.

[¶43] Build remained prepared to proceed toward closing upon timely satisfaction of the conditions necessary to complete a commercially reasonable transfer of title.

### F.  Build Never Abandoned Transaction

[¶44] At all times following entry of the Sale Order, Build remained committed to consummating the purchase of the Property in accordance with the Purchase Agreement and the Sale Order.

[¶45] Build continued to devote substantial time, effort, and financial resources toward satisfying the requirements necessary to close the transaction, including coordinating with its lenders, legal counsel, environmental consultants, surveyors, title professionals, and other transaction participants.

[¶46] Build repeatedly communicated with the Trustee and the Trustee's professionals concerning matters necessary to complete the closing and sought the Trustee's cooperation in resolving issues that arose during the closing process.

[¶47] At no time prior to the Trustee's declaration of default did Build notify the Trustee that it intended to terminate the Purchase Agreement, abandon the transaction, or refuse to proceed with closing.

[¶48] Build did not request return of its earnest money deposit in lieu of closing, nor did it seek to withdraw from the transaction.

[¶49] Rather, Build consistently expressed its willingness to complete the purchase promptly upon resolution of the title issues that prevented issuance of commercially acceptable owner's and lender's title insurance and completion of the scheduled closing.

[¶50] Build remained ready, willing, and financially capable of completing the transaction and continues to seek enforcement of the Court-approved Purchase Agreement through this adversary proceeding.

[¶51] The Trustee's subsequent filing of the Rule 60 Motion confirmed that the concerns raised during the closing process warranted judicial attention. Build reasonably understood that the parties would seek to resolve those issues through the Court rather than treat the unresolved issues as a basis for forfeiture of Build's rights under the Purchase Agreement.

### G.      Title Issues Prevent Closing

[¶52] As the parties moved toward closing, the title professionals reviewing the transaction identified concerns regarding whether commercially acceptable owner's and lender's title insurance could be issued based upon the language of the Sale Order and the requirements of South Dakota law.

[¶53] The closing agent First Dakota Title, d/b/a The Title Resource Network ("First Dakota") advised that it could not issue title insurance for this transaction.

[¶54] Chicago Title Insurance Company ("Chicago Title") likewise declined to issue title insurance in a form acceptable for closing. After First Dakota advised that Chicago Title would not insure the transaction under the Sale Order as entered, the Trustee, through his counsel, expressly invited Build to locate another title company in an effort to facilitate closing rather than

8

insisting that title insurance was unnecessary. Build accepted that invitation and continued working to obtain title insurance through another national underwriter.

[¶55] Acting upon the Trustee's invitation, Build sought an alternative title insurer through First Dakota. Old Republic National Title Insurance Company ("Old Republic") independently reviewed the transaction and likewise concluded that an updated bankruptcy order specifically identifying the judgments, liens, and lis pendens from which the Property was being conveyed free and clear was required before it would issue title insurance.

[¶56] That insurer, Old Republic, likewise independently advised that it could not issue commercially acceptable title insurance under the Sale Order in its existing form.

[¶57] Those concerns were promptly communicated to the Trustee.

[¶58] Build advised the Trustee that commercially acceptable title insurance was a prerequisite to lender funding and completion of the transaction.

[¶59] Build requested the Trustee's cooperation in resolving the title issues so the transaction could close.

**H.      The Trustee Seeks to Amend the Sale Order**

[¶60] After the title issues became apparent, the Trustee filed a Motion to Amend the Sale Order pursuant to Rule 60.

[¶61] In that Motion, the Trustee sought to amend the Sale Order by specifically identifying and enumerating the liens and encumbrances from which the Property was to be sold free and clear.

[¶62] The Trustee represented that the requested amendment would facilitate recording and satisfy concerns identified during the title underwriting process.

9

[¶63] The Trustee filed the Rule 60 Motion after the title issues had already prevented the scheduled closing from occurring.

### I.      Trustee Declares Default

[¶64] Prior to filing the Rule 60 Motion, the Trustee asserted that Build had defaulted under the Purchase Agreement.

[¶65] The Trustee further asserted that he was entitled to terminate Build's contractual rights, retain Build's earnest money deposit, and proceed with a sale to Archer.

[¶66] Build disputes that it was in default and maintains that it remained ready, willing, and able to complete the transaction promptly upon resolution of the title issues that prompted the Trustee's Rule 60 Motion.

[¶67] An actual, immediate, and justiciable controversy therefore exists concerning the parties' respective rights and obligations under the Purchase Agreement and the Sale Order.

[¶68] This adversary proceeding does not seek to relitigate the Court's approval of the sale to Build. Rather, it seeks a determination of the parties' respective rights following the failure of that court-approved sale to close, including whether the Trustee may rely upon a purported default that occurred while the Trustee himself was simultaneously seeking to amend the Sale Order in order to resolve the very title issues that prevented consummation of the transaction.

[¶69] Throughout the closing process, Build repeatedly sought to consummate the transaction and requested the Trustee's cooperation in resolving the title issues identified by the title insurers and closing professionals. Rather than dispute that those issues existed, the Trustee sought judicial modification of the Sale Order through the Rule 60 Motion. Despite acknowledging the need for such relief, the Trustee simultaneously asserted that Build had defaulted by failing to close before the title issues identified in the Rule 60 Motion had been resolved.

[¶70] Following the Trustee's declaration of default and while the disputes concerning the failed closing and the Rule 60 Motion remained pending, the Trustee terminated First Dakota as the closing agent to conduct the closing.

[¶71] Upon information and belief, the Trustee's decision to terminate First Dakota occurred after that title company had advised that it could not complete the closing under the Sale Order as entered.

[¶72] Build was not responsible for the termination of First Dakota and was not consulted regarding the Trustee's decision.

[¶73] The Purchase Agreement contains a prevailing-party attorney's fees provision entitling the prevailing party in litigation arising out of or relating to the Purchase Agreement to recover its reasonable attorney's fees, costs, and expenses.

[¶74] As a direct result of the Trustee's actions and omissions, including the declaration of default, the filing of the Rule 60 proceedings, and the refusal to consummate the Court-approved sale, Build has incurred and continues to incur substantial attorney's fees and litigation expenses in enforcing its contractual and equitable rights.

[¶75] At all relevant times, the Trustee owed Build a duty to exercise any contractual discretion honestly, reasonably, and in good faith, and not to act in a manner that deprived Build of the benefit of the Purchase Agreement.

[¶76] Build at all times acted diligently and in good faith to complete the transaction and cooperated with the Trustee in attempting to resolve the title issues that arose during the closing process.

11

**J.      Trustee Terminates Closing Agent**

[¶77] Upon information and belief, the Trustee recently replaced First Dakota after it advised that it could not proceed with the closing under the Sale Order as entered and disputes were resolved.

[¶78] The Trustee's decision to terminate First Dakota further disrupted the closing process and materially affected Build's ability to consummate the court-approved transaction.

[¶79] Build did not request that First Dakota be terminated and was prepared to continue working with First Dakota to resolve the issues identified during the title underwriting process.

## COUNT I

### Declaratory Judgment (28 U.S.C. §§ 2201 and 2202)

[¶80] Build incorporates by reference the allegations contained in paragraphs 1 through 79 as though fully set forth herein.

[¶81] An actual, present, and justiciable controversy exists between Build and the Trustee concerning their respective rights and obligations under the Purchase Agreement, the Sale Order, and applicable bankruptcy law.

[¶82] The Trustee contends that Build defaulted under the Purchase Agreement by failing to close on or before July 6, 2026.

[¶83] Build disputes that contention and alleges that it remained ready, willing, and able to consummate the transaction upon the Trustee's ability to deliver title sufficient to permit the commercially reasonable closing of the transaction.

[¶84] The Trustee further contends that delivery of a Trustee's Deed constituted complete performance of all obligations owed by the estate and that the Trustee had no obligation to address the title issues that prevented closing or conveyance of marketable title.

[¶85] Build disputes those assertions.

[¶86] The Trustee subsequently sought amendment of the Sale Order pursuant to Rule 60 in order to address title underwriting concerns that arose during the closing process.

[¶87]   The parties further dispute:

a.      whether Build defaulted under the Purchase Agreement;

b.      whether the Trustee satisfied all obligations necessary to complete the sale;

c.      whether the Trustee validly terminated Build's rights under the Purchase Agreement;

d.      whether the Trustee may retain Build's earnest money deposit;

e.      whether the Trustee may proceed with the proposed sale to Archer or any other party; and

f.      whether Build remains entitled to enforce the Purchase Agreement.

[¶88]   A judicial declaration will terminate the uncertainty and controversy existing between the parties.

## COUNT II

### Specific Performance

[¶89] Build incorporates paragraphs 1 through 88 as though fully set forth herein.

[¶90] The Purchase Agreement constitutes a valid and enforceable agreement.

[¶91] This Court approved the Purchase Agreement through entry of the Sale Order.

[¶92] Build has at all relevant times acted in good faith and has substantially performed its obligations under the Purchase Agreement.

[¶93] Build remained ready, willing, and able to complete the purchase upon satisfaction of the basic conditions necessary for closing.

13

[¶94] The Property constitutes unique commercial real property for which there exists no adequate remedy at law.

[¶95] Monetary damages cannot adequately compensate Build for the loss of its contractual right to acquire the Property.

[¶96] Unless restrained, the Trustee intends to convey the Property to Archer, thereby permanently depriving Build of the benefit of its court-approved bargain.

[¶97] Build is therefore entitled to specific performance of the Purchase Agreement.

WHEREFORE, Build requests an Order requiring the Trustee to specifically perform the Purchase Agreement and consummate the sale to Build upon terms determined by the Court.

## COUNT III

**Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

[¶98] Build incorporates paragraphs 1 through 97 as though fully set forth herein.

[¶99] The Purchase Agreement imposed upon each party an implied duty of good faith and fair dealing in the performance and enforcement of the agreement.

[¶100] The Trustee breached that implied covenant by, among other things:

 a.  declaring Build in default while simultaneously seeking judicial modification of the Sale Order to address the title issues that impeded closing;

 b.  failing to cooperate in facilitating a commercially reasonable closing;

 c.  taking inconsistent positions regarding the significance of the title issues;

 d.  attempting to deprive Build of the benefit of its court-approved bargain while pursuing relief designed to cure the impediment to closing; and

14

e.      exercising contractual rights in a manner inconsistent with the parties' justified expectations and the purpose of the Purchase Agreement.

[¶101] If the Court determines contractual performance obligations matured prior to closing, the Trustee materially breached the Purchase Agreement.

[¶102] The Trustee failed to cooperate in completing the closing.

[¶103] The Trustee failed to provide documents and assurances reasonably necessary to permit consummation of the transaction.

[¶104] The Trustee declared Build in default despite unresolved issues concerning the Trustee's own ability to complete the approved transaction.

[¶105] As a direct result, Build has sustained substantial damages, including transaction costs, financing expenses, due diligence expenses, professional fees, and loss of the benefit of its bargain.

WHEREFORE, Build requests judgment for damages in an amount to be proven at trial.

## COUNT IV

### Declaratory Judgment Regarding Earnest Money

[¶106] Build incorporates paragraphs 1 through 105 as though fully set forth herein.

[¶107] Build deposited $1,125,000 in earnest money with First Dakota pursuant to the Purchase Agreement. The amount deposited is the property of Build, and the Trustee's claim thereto is tortious and wrongful.

[¶108] The Trustee asserts that Build defaulted and that the bankruptcy estate is entitled to retain the earnest money.

[¶109] Build disputes those assertions.

15

[¶110] Because Build was not in default, or because any alleged default was excused, the Trustee possesses no contractual or equitable right to retain the earnest money.

[¶111] An actual controversy therefore exists concerning ownership and disposition of the earnest money.

WHEREFORE, Build requests a declaration that the earnest money is the property of Build and shall be promptly returned to Build together with interest to the maximum extent permitted by applicable law.

## COUNT V

### Preliminary and Permanent Injunction

[¶112] Build incorporates paragraphs 1 through 111 as though fully set forth herein.

[¶113] Unless enjoined, the Trustee intends to convey the Property to Archer or another purchaser. Once the Property is conveyed to a third party, Build's contractual right to acquire the Property will be permanently extinguished, and the Court's ability to grant meaningful specific performance will be materially impaired or rendered impossible.

[¶114] The Property is unique, and monetary damages alone cannot adequately compensate Build for the loss of its contractual rights under the Court-approved Purchase Agreement or the loss of the opportunity to acquire the Property.

[¶115] Build has no adequate remedy at law because, absent injunctive relief, the transfer of the Property to a third party would deprive Build of the principal subject matter of the Purchase Agreement and this action and effectively moot its claims for specific performance and declaratory relief.

16

[¶116] The balance of equities weighs heavily in favor of preserving the status quo pending final adjudication. Build seeks only to preserve the Court-approved transaction and prevent the Property from being transferred before the parties' respective rights have been determined.

[¶117] If the Trustee conveys the Property to Archer or another third party before this dispute is resolved, the controversy will fundamentally change. Build's claims for specific performance may become impossible to grant, and the Court's ability to enforce its own Sale Order and restore the parties to their pre-default positions will be substantially impaired.

[¶118] The requested injunctive relief will not unduly prejudice the bankruptcy estate because it merely preserves the status quo while the Court adjudicates the parties' rights. By contrast, denial of injunctive relief would likely result in immediate and irreparable harm to Build.

[¶119] The public interest favors enforcement of court-approved sale procedures, the orderly administration of bankruptcy estates, and the preservation of the Court's ability to grant effective relief.

WHEREFORE, Build respectfully requests that the Court:

a.    issue a temporary restraining order, if necessary;

b.    issue a preliminary injunction preserving the status quo pending final judgment;

c.    permanently enjoin the Trustee from transferring the Property to Archer or any other party unless and until the Court has finally adjudicated Build's rights under the Purchase Agreement;

d.    award Build its attorney's fees, costs, and expenses as provided in the Purchase Agreement and applicable law; and

e.    grant such other and further relief as the Court deems just and proper.

17

## COUNT VI

### Declaratory Judgment Regarding Backup Sale

[¶120]  Build incorporates paragraphs 1 through 119 as though fully set forth herein.

[¶121]  The Trustee contends that the conditions permitting sale to Archer have occurred.

[¶122]  Build disputes that contention.

[¶123]  Build alleges that the Trustee lacked authority to terminate Build's contractual rights because Build did not default under the Purchase Agreement.

[¶124]  Until the parties' respective rights are adjudicated, the Trustee lacks authority to proceed with the proposed sale to Archer.

[¶125]  A declaration concerning the parties' rights is necessary to prevent inconsistent rulings and avoid irreparable injury.

WHEREFORE, Build requests a declaration that the Trustee is not presently authorized to consummate the proposed sale to Archer.

## COUNT VII

### Equitable Estoppel

[¶126]  Build incorporates by reference Paragraphs 1 through 125 as though fully set forth herein.

[¶127]  Throughout the period leading to the scheduled closing, Build acted in good faith and continued to incur substantial expense in an effort to consummate the court-approved sale.

[¶128]  During the closing process, title insurers and First Dakota, as the designated closing agent, identified concerns regarding the ability to issue commercially acceptable owner's and lender's title insurance policies under the Sale Order as entered.

[¶129]  Those concerns were promptly communicated to the Trustee.

18

[¶130] Rather than reject those concerns as legally irrelevant, the Trustee thereafter sought relief from this Court pursuant to Rule 60 to amend the Sale Order by specifically identifying and enumerating the liens and encumbrances affecting the Property.

[¶131] By filing the Rule 60 Motion, the Trustee acknowledged that the title concerns warranted judicial attention and that amendment of the Sale Order would facilitate consummation of the approved sale.

[¶132] Build reasonably relied upon the Trustee's conduct in pursuing judicial relief designed to resolve the title issues that had arisen during the closing process.

[¶133] Having sought judicial modification of the Sale Order to address those title concerns, the Trustee is equitably estopped from now asserting that:

    a.    the title issues were legally insignificant;

    b.    the requested amendment was unnecessary to permit closing;

    c.    Build alone was responsible for the failure of the transaction to close; or

    d.    Build defaulted while the Trustee himself was pursuing judicial relief intended to address the very circumstances that impeded closing.

[¶134] Permitting the Trustee simultaneously to seek judicial modification of the Sale Order while asserting that the matters necessitating that modification were legally irrelevant would work an inequitable result and would substantially prejudice Build.

[¶135] Equity does not permit a party to assume inconsistent positions to the detriment of another party who reasonably relied upon the conduct giving rise to those positions.

WHEREFORE, Build requests judgment declaring that the Trustee is equitably estopped from asserting that Build defaulted based upon circumstances that the Trustee himself sought to

19

remedy through the Rule 60 proceedings, together with such other equitable relief as the Court deems just and proper.

## COUNT VIII

### Equitable Relief to Preserve and Enforce the Court-Approved Sale

[¶136] Build incorporates Paragraphs 1 through 135 as if fully set forth herein.

[¶137] Bankruptcy courts are courts of equity possessing broad authority to interpret, enforce, and preserve the integrity of their own orders entered pursuant to 11 U.S.C. § 363.

[¶138] This Court previously approved the Purchase Agreement through entry of the Sale Order.

[¶139] Build proceeded in reliance upon that Court-approved transaction.

[¶140] Prior to closing, issues arose concerning whether the Sale Order permitted issuance of commercially acceptable title insurance necessary to consummate the transaction.

[¶141] Those issues resulted in the Trustee filing the Rule 60 Motion seeking amendment of the Sale Order.

[¶142] The Rule 60 Motion was filed after the scheduled closing process had been interrupted by the title underwriting issues and after the Trustee had asserted that Build failed to timely close.

[¶143] Under these unique circumstances, strict enforcement of the contractual closing deadline would produce an inequitable result because the inability to close arose while the Trustee himself was seeking judicial modification of the Sale Order in order to facilitate consummation of that same transaction.

[¶144] Build has continuously maintained its willingness and ability to consummate the purchase upon resolution of the issues presented in the Rule 60 proceedings.

[¶145] Build has never abandoned the transaction.

[¶146] Unless equitable relief is granted, Build will permanently lose the benefit of the Court-approved sale despite having diligently pursued closing and despite the Trustee's own acknowledgment that amendment of the Sale Order was appropriate.

[¶147] Equity favors preserving the parties' respective rights pending final adjudication rather than allowing expiration of the contractual closing date to determine the parties' substantive rights under these extraordinary circumstances.

[¶148] Accordingly, Build requests that the Court exercise its equitable authority to:

    a.      toll or suspend the contractual closing deadline pending final adjudication of the parties' respective rights;

    b.      declare that the expiration of the July 6, 2026, closing date does not, under the circumstances presented, constitute a default by Build;

    c.      preserve Build's rights under the Purchase Agreement pending final judgment;

    d.      grant such further equitable relief as is necessary to permit consummation of the Court-approved sale if Build prevails in this action.

**COUNT IX**

**Judicial Estoppel**

[¶149] Build incorporates by reference Paragraphs 1 through 148 as though fully set forth herein.

[¶150] Judicial estoppel is an equitable doctrine intended to protect the integrity of the judicial process by preventing a litigant from obtaining an advantage through the assertion of inconsistent positions before the same court.

21

[¶151] Prior to the scheduled closing, title insurers and First Dakota advised that the Sale Order, as entered, presented obstacles to issuance of commercially acceptable owner's and lender's title insurance policies necessary to consummate the transaction.

[¶152] Those concerns were promptly communicated to the Trustee.

[¶153] After First Dakota advised that its underwriter would not issue customary title insurance under the Sale Order as entered, the Trustee did not reject those underwriting concerns as legally irrelevant or insist that the Sale Order was sufficient to permit closing. Instead, through his counsel, the Trustee expressly invited Build to identify and utilize an alternative title insurance company to facilitate the transaction.

[¶154] In reliance upon the Trustee's invitation, Build undertook additional efforts to locate an alternative title insurer. Build thereafter pursued title insurance through Old Republic, a separate national title underwriter.

[¶155] Old Republic independently concluded that it likewise could not issue customary title insurance under the existing Sale Order without an updated Bankruptcy Court order specifically identifying the judgments, liens, and lis pendens from which the Property was being conveyed free and clear, together with authority for release of the lis pendens and expiration of any applicable appeal period.

[¶156] Following Old Republic's independent determination, the Trustee thereafter sought relief from this Court pursuant to Rule 60 requesting amendment of the Sale Order to address substantially the same issues identified by the title insurers.

[¶157] In other words, rather than reject the title concerns as immaterial, the Trustee invoked the jurisdiction of this Court by filing a Motion pursuant to Rule 60 seeking amendment of the Sale Order and, thereafter, terminated the title company.

[¶158] The Trustee's subsequent decision to terminate First Dakota is consistent with the Trustee's litigation position that those issues were immaterial, but inconsistent with his earlier decision to seek Rule 60 relief specifically because of those same issues.

[¶159] In that Motion, the Trustee represented that amendment of the Sale Order was appropriate to facilitate recording, title administration, and the consummation of the Court-approved sale by specifically identifying the liens and encumbrances from which the Property was to be conveyed free and clear.

[¶160] The Trustee thereby represented to this Court that judicial modification of the Sale Order was appropriate because the existing language of the Sale Order was insufficient to accomplish the intended transfer marketable title in the ordinary course of the closing process.

[¶161] In subsequent filings, however, the Trustee has asserted that:

a.   the Trustee had no obligation to provide commercially insurable or marketable title;

b.   the title issues identified by the title insurers were legally irrelevant;

c.   Build's inability to close resulted solely from its alleged lack of financing;

d.   Build alone was responsible for the failure of the transaction to close; and

e.   the Trustee fully performed all obligations required under the Purchase Agreement merely by tendering a Trustee's Deed.

[¶162] The Trustee's conduct throughout the closing process—including inviting Build to obtain an alternative title insurer, Build's successful procurement of an independent review by Old Republic, and the Trustee's subsequent filing of the Rule 60 Motion—demonstrated the Trustee's recognition that the issues raised by the title insurers warranted further judicial attention.

[¶163] Having encouraged Build to pursue an alternative title insurer, having received confirmation from a second independent national underwriter that additional bankruptcy relief was required, and thereafter having sought Rule 60 relief to address those concerns, the Trustee now asserts that the title issues were legally immaterial, that no additional bankruptcy relief was necessary, and that Build alone defaulted by failing to close on July 6, 2026.

[¶164] These positions are fundamentally inconsistent. If the title issues were legally irrelevant and the Sale Order was fully sufficient to permit closing, there would have been no reason to invite Build to seek an alternative title insurer or to seek amendment of the Sale Order through Rule 60 proceedings.

[¶165] Conversely, if the concerns raised by two independent national title insurers warranted further investigation and judicial modification of the Sale Order, the Trustee should not now be permitted to characterize those same concerns as immaterial for purposes of establishing that Build defaulted under the Purchase Agreement.

[¶166] Those positions cannot be reconciled.

[¶167] If amendment of the Sale Order was unnecessary because the Trustee's obligations had already been fully performed and the title issues were legally irrelevant, there would have been no basis for seeking relief under Rule 60.

[¶168] Conversely, if amendment of the Sale Order was necessary to address title underwriting concerns that impeded consummation of the Court-approved sale, the Trustee cannot now characterize those same concerns as immaterial in order to establish that Build defaulted.

[¶169] The Trustee should not be permitted to obtain the benefit of one position in seeking amendment of the Sale Order while simultaneously obtaining a second benefit by asserting the opposite position in defense of this action.

24

[¶170] Application of judicial estoppel is necessary to preserve the integrity of these proceedings and to prevent inconsistent factual and legal positions from producing an inequitable result.

WHEREFORE, Build respectfully requests that this Court determine that the Trustee is judicially estopped from asserting positions inconsistent with those advanced in support of the Rule 60 Motion, including but not limited to assertions that the title issues prompting the Rule 60 Motion were immaterial to the parties' ability to consummate the Court-approved sale, together with such other and further relief as the Court deems just and proper.

## COUNT X

### Declaratory Relief Based Upon the Prevention Doctrine

[¶171] Build incorporates by reference Paragraphs 1 through 170 as though fully set forth herein.

[¶172] The Purchase Agreement contemplated that the transaction would close on or before July 6, 2026, subject to the parties' respective obligations and the conditions necessary to consummate the Court-approved sale.

[¶173] The timely occurrence of the closing was a condition dependent upon the cooperation and performance of both parties.

[¶174] At all relevant times, Build acted diligently and in good faith to satisfy its obligations under the Purchase Agreement and to proceed toward closing.

[¶175] Prior to the scheduled closing, title insurers and the designated closing agent identified issues concerning the ability to issue commercially acceptable owner's and lender's title insurance policies based upon the Sale Order as entered.

[¶176] Those concerns were communicated to the Trustee.

25

[¶177] Rather than reject those concerns as immaterial, the Trustee acknowledged their significance by seeking relief from this Court pursuant to Rule 60 to amend the Sale Order.

[¶178] The Trustee's Rule 60 Motion sought judicial modification of the Sale Order in an effort to address the title underwriting issues that had arisen during the closing process and to facilitate consummation of the Court-approved sale.

[¶179] The Trustee nevertheless declared Build in default before the issues identified in the Rule 60 Motion had been finally resolved.

[¶180] Under the prevention doctrine, a contracting party may not rely upon the nonoccurrence of a contractual condition or declare the opposing party in default where that party's own conduct materially contributed to preventing, delaying, hindering, or frustrating satisfaction of the condition.

[¶181] To the extent the inability to close by July 6, 2026, resulted in whole or in part from the unresolved title issues that were the subject of the Trustee's Rule 60 Motion, the Trustee is barred from relying upon the expiration of the contractual closing date as a basis for declaring Build in default.

[¶182] Equity likewise precludes the Trustee from benefiting from circumstances that the Trustee himself acknowledged required judicial intervention before the approved transaction could be consummated.

[¶183] Build did not waive its rights under the Purchase Agreement and remained ready, willing, and able to complete the transaction upon resolution of the issues identified in the Rule 60 proceedings.

[¶184] An actual and justiciable controversy therefore exists concerning the application of the prevention doctrine to the facts and circumstances presented in this case.

26

<u>**COUNT XI**</u>

**Breach of the Contractual Duty to Cooperate and Facilitate Performance**

[¶185] Build incorporates by reference Paragraphs 1 through 184 as though fully set forth herein.

[¶186] The Purchase Agreement imposed upon each party an obligation to cooperate reasonably with the other in accomplishing the purpose of the Agreement and to refrain from conduct that would unnecessarily hinder, delay, frustrate, or prevent performance.

[¶187] As Chapter 7 Trustee administering property of the bankruptcy estate pursuant to the Sale Order, the Trustee likewise owed a duty to cooperate in good faith to facilitate consummation of the Court-approved transaction.

[¶188] Build at all relevant times cooperated with the Trustee and undertook substantial efforts to satisfy its obligations under the Purchase Agreement, including retaining professionals, coordinating with lenders and title companies, responding to requests for information, and preparing to timely close.

[¶189] During the closing process, Build promptly notified the Trustee of the title underwriting issues identified by the title insurers and requested the Trustee's cooperation in resolving those issues so the transaction could proceed.

[¶190] Rather than reasonably cooperating to facilitate the closing, the Trustee breached his contractual duty to cooperate by, among other things:

    a.    declaring Build in default while the title issues affecting the transaction remained unresolved;

b.   asserting that Build alone was responsible for the failure of the closing despite subsequently seeking judicial modification of the Sale Order to address the title issues that impeded consummation of the transaction;

c.   failing to cooperate in providing commercially reasonable assurances and documentation necessary to facilitate the scheduled closing;

d.   taking inconsistent positions concerning the significance of the title issues identified during the closing process;

e.   attempting to terminate Build's contractual rights before the issues identified in the Rule 60 Motion had been resolved by the Court;

f.   terminating the title company engaged to close the transaction; and

g.   otherwise exercising asserted contractual rights and taking actions in a manner that materially hindered and frustrated consummation of the Court-approved sale.

[¶191] The Trustee's subsequent termination of First Dakota, after declaring Build in default and after the title company had identified the issues giving rise to the Rule 60 Motion, further demonstrates the Trustee's decision to abandon efforts to consummate the court-approved transaction rather than continue cooperating toward resolution of the outstanding title issues.

[¶192] The Trustee's conduct materially hindered, delayed, and frustrated Build's ability to complete the transaction contemplated by the Purchase Agreement and approved by this Court.

[¶193] As a direct and proximate result of the Trustee's breach of the contractual duty to cooperate, Build has incurred substantial damages, including attorney's fees and litigation expenses recoverable under the Purchase Agreement, financing costs, due diligence expenses,

28

professional fees, carrying costs, lost business opportunities, and other damages in an amount to be determined at trial.

[¶194] Unless the Trustee is enjoined and ordered to comply with his contractual obligations, Build will continue to suffer irreparable injury for which there is no adequate remedy at law.

WHEREFORE, Build respectfully requests that the Court enter judgment in its favor and against the Trustee:

a.    declaring that the Trustee breached his contractual duty to cooperate and facilitate performance of the Purchase Agreement;

b.    awarding Build all damages recoverable as a result of such breach;

c.    awarding Build its reasonable attorney's fees, costs, and expenses pursuant to the Purchase Agreement;

d.    granting such equitable relief as is necessary to restore Build to the position it would have occupied had the Trustee fulfilled his duty to cooperate; and

e.    awarding such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Build, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Erik A. Ahlgren, solely in his capacity as Chapter 7 Trustee, and grant the following relief:

A.    Declaring that Build did not default under the Purchase Agreement and that the Trustee improperly declared Build in default;

B.    Declaring that the Trustee was not entitled to terminate the Purchase Agreement or Build's rights thereunder;

29

C.      Declaring that the conditions necessary to permit the Trustee to proceed with the proposed sale to Archer Land Co., LLC have not occurred and that the Trustee presently lacks authority to consummate such sale;

D.      Ordering specific performance of the Purchase Agreement and directing the Trustee to consummate the sale to Build upon such terms and conditions as the Court determines are necessary and appropriate to effectuate the Court-approved transaction;

E.      Temporarily, preliminarily, and permanently enjoining the Trustee from conveying the Property to Archer Land Co., LLC or any other purchaser pending final adjudication of the parties' rights;

F.      Declaring that the contractual closing deadline was excused, suspended, tolled, or otherwise rendered unenforceable under the doctrines of prevention, equitable estoppel, judicial estoppel, and the Court's equitable powers;

G.      Declaring that the Trustee is precluded from relying upon the alleged July 6, 2026, default or otherwise asserting that Build forfeited its rights under the Purchase Agreement;

H.      Awarding Build all compensatory damages proven at trial, including transaction costs, financing costs, due diligence expenses, professional fees, carrying costs, lost business opportunities, and all other damages recoverable under the Purchase Agreement or applicable law;

I.      Awarding Build its reasonable attorney's fees, expert witness fees, costs, expenses, and disbursements incurred in connection with the Rule 60 proceedings, this adversary proceeding, and all related litigation, pursuant to the Purchase Agreement and other applicable law;

J.      Awarding prejudgment and post-judgment interest as permitted by law;

K.      Declaring that any monetary damages, interest and fees awarded to Plaintiff arising from the Trustee's postpetition conduct and breach of the Purchase and Sale Agreement constitute

an allowed administrative expense of the bankruptcy estate entitled to priority pursuant to 11 U.S.C. §§ 503(b) and 507(a);

L.      In the alternative, if the Court determines that Build is not entitled to specific performance or restoration of its contractual rights, entering judgment in favor of Build for (i) the immediate return of its $1,125,000 earnest money deposit together with all accrued interest, (ii) all damages recoverable under the Purchase Agreement resulting from the Trustee's conduct, including damages arising from the wrongful declaration of default, and (iii) all attorney's fees, costs, and expenses recoverable under the Purchase Agreement;

M.      Awarding such other and further legal and equitable relief as the Court deems just and proper.

Dated this 15th day of July, 2026.

 /s/ Douglas W. Murch
Douglas W. Murch, ND ID #05983
CONMY FESTE LTD.
3369 45th Street South
Fargo, ND  58104
(701) 293-9911
dmurch@conmylaw.com

ATTORNEY FOR BUILD, LLC

31